UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 15-21174-CV-HUCK/OTAZO-REYES

DORI J. KAPLAN,

    Plaintiff,

vs.

AXA EQUITABLE LIFE INSURANCE
COMPANY, a Delaware corporation,

    Defendant.

_____/

## ORDER

THIS MATTER comes before the Court upon AXA Equitable Insurance Company's ("Defendant['s]" or "AXA['s]") Renewed Motion for Summary Judgment with Incorporated Memorandum of Law ("Motion") [D.E. 78], filed on May 4, 2016. The Court has thoroughly reviewed the Motion,[1] the Plaintiff's Response in Opposition to the Motion ("Plaintiff's Response") [D.E. 94],[2] the Defendant's Reply in Support of the Motion ("Reply") [D.E. 97], the pertinent portions of the record, and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court grants AXA's Motion.

---

[1] Defendant's Motion is supported by a Statement of Material Facts as to Which No Genuine Issue Exists ("Defendant's Facts") [D.E. 79], filed on May 4, 2016.

[2] Plaintiff's Response is supported by a Response to Defendant's Facts and a Statement of Material Facts ("Plaintiff's Facts") [D.E. 95], filed on May 31, 2016.

## I. BACKGROUND[3]

In this action, Plaintiff Dori J. Kaplan ("Plaintiff") brings a one count complaint against Defendant AXA for alleged breach of contract, as the beneficiary under a life insurance policy that had insured the life of her husband, Martin S. Kaplan (the "Insured" or "Mr. Kaplan"). (*See* "Complaint," D.E. 1-2).[4] AXA rescinded the policy based on material misrepresentations made by the Insured in his application for life insurance, and relating to the Insured's medical history. (*See* "Rescission Letter," D.E. 80-16; Mot. 1; Affirmative Defenses, D.E. 6).

In 2012, the Insured applied for a Small Business Administration loan with Wells Fargo, and as a term to his loan application, he was required to secure a life insurance policy in the amount of $890,000.00. (*See* Pl.'s Resp. 3). Wells Fargo referred the Insured to an AXA insurance agent, Charles Bailey, to secure the necessary policy. (*See id.*). Consistent with AXA's standard practices, the application process for the Insured's policy consisted of: (1) the Insured disclosing information in response to questions in Parts 1 and 2 of the policy application, (2) the Insured undergoing a routine paramedical examination, and (3) AXA requesting records from the medical providers disclosed by the Insured in his policy application. (*See* Warner Decl., D.E. 80-3, ¶ 7).

The Insured signed Parts 1 and 2 of the completed policy application on April 11, 2012 and April 10, 2012, respectively. (*See* Application Part 1, "App. Part 1," D.E. 80-1; Application

---

[3] At the summary judgment stage, the Court views the facts and makes inferences from the facts in the light most favorable to the non-moving party. Thus, this factual synopsis takes Plaintiff Dori J. Kaplan's properly supported factual allegations as true. Pursuant to Local Rule 56.1(b) of the U.S. District Court for the Southern District of Florida, undisputed facts set forth by the movant and supported by evidence in the record are deemed admitted.

[4] Plaintiff originally filed her Complaint in state court and Defendant successfully removed the suit to federal court based on diversity jurisdiction. (*See* D.E. 1); 28 U.S.C. § 1332.

2

Part 2, "App. Part 2" D.E.80-2). On his application, the Insured identified his personal physician as Dr. Oscar Dominguez and responded that he had submitted to an annual physical examination on January 1, 2012, the results of which were normal and there was no treatment given or recommended. (*See* Def.'s Facts ¶¶ 5–7; App. Part 2).

The Insured responded "No" to numerous health-related questions on Part 2 of the policy application. (*See* App. Part 2). In response to Question 8, the Insured responded that other than the aforementioned physical examination by Dr. Dominguez, within the last 5 years, he had not: "[c]onsulted or been examined or treated by any physician or practitioner" (Question 8(a)); "[h]ad any illness, injury, or surgery" (Question 8(b)); "[b]een a patient in or been examined or treated at a hospital, clinic, sanitarium, or other medical facility" (Question 8(c)); "[h]ad an electrocardiogram, x-ray, other diagnostic test" (Question 8(d)); or "[b]een advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed" (Question 8(e)). Further, the Insured responded "No" to Question 3(g), asking, "Has Proposed Insured ever been diagnosed or treated by a member of the medical profession for [d]iabetes; cyst, tumor or cancer; thyroid or glandular disorder; skin disease or disorder[.]" The Insured responded that he has not "ever been diagnosed or treated . . . for . . . disease or disorder of the muscles or bones, including the back, or joints[.]" (Question 3(h)). The Insured responded that he has not "ever been diagnosed or treated . . . for . . . [d]isease or disorder of eyes, ears, nose or throat[.]" (Question 3(a)). The Insured also responded "No" to Question 4, asking, "Is Proposed Insured now under observation or taking treatment[.]" Finally, in response to Question 10 on family history, the Insured responded that his mother died of lung cancer at age 60. (*See* App. Part 2).

At the conclusion of Part 2 of the policy application, the Insured signed his name to the

3

following attestation: "The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the application for insurance . . . . The insurer may rely on them in acting on the application . . . ." (App. Part 2).

As part of the application process, the Insured underwent a paramedical examination on April 10, 2012 administered by Dr. Grover E. Barrientos. (*See* D.E. 80-4). In addition, the Insured's medical records from Dr. Dominguez were obtained on April 24, 2012. (*See* D.E. 80-6). These medical records revealed misrepresentations in the Insured's application. In particular, from these medical records AXA learned that the Insured underwent a right nephrectomy with the excision of a cyst in 2007, and that the Insured was treated by Dr. Dominguez for a fungal nail infection, allergic rhinitis, osteoporosis, and lumbago—contradicting the Insured's answers to the application questions. (*See* Warner Decl. ¶ 8).

After reviewing the completed and signed policy application, the paramedical report by Dr. Barrientos, and the medical records provided by Dr. Dominguez, AXA concluded that, in spite of the discovered misrepresentations, it could issue a life insurance policy for Mr. Kaplan at the highest rating, Preferred Elite Non-Tobacco ("PENT"). On April 30, 2012, AXA issued a life insurance policy, Policy No. 112 008 837 (the "Policy"), with the requested face amount of $890,000.00 to the Insured with Plaintiff as the beneficiary. (*See* Mot. 7; Policy, D.E. 80-8).

Shortly thereafter, on November 1, 2012, the Insured passed away from Amyotrophic Lateral Sclerosis (ALS). (*See* D.E. 80-10; D.E. 96-13). Following Plaintiff's claim on the policy as the beneficiary, AXA extensively examined the medical history of the Insured, because his death was within the two-year contestability period. In so doing, AXA discovered additional

medical records, including from a dermatology practice, Skin and Cancer Associates. (*See* D.E. 80-12). These records revealed that the Insured regularly consulted, was examined, and was treated at Skin and Cancer Associates where he was diagnosed with malignant melanoma-in-situ in 1998, and underwent melanoma checks from 1998 until at least July 2012. (*See id.* at 1, 72). The Insured was under continuous treatment for the removal of pre-cancerous lesions, including dysplastic nevi which carry a risk of becoming a melanoma.[5] (*See* Bridges Depo. 50–51).

AXA denied Plaintiff's claim for policy benefits and rescinded the Policy by letter dated April 18, 2013. (*See* Rescission Letter). AXA issued a check to Plaintiff in the amount of $1,568.60, which represents a full refund of all past premium payments for the Policy plus 3% interest. (*See id.* at 2). In denying the claim, AXA's claim analyst, Randy Collins, cited the Insured's failure "to disclose information that would have had a material impact on the decision to issue this policy." (*Id.*). In particular, the Insured denied or failed to disclose his dermatology visits to Skin and Cancer Associates and that he had a history of melanoma, which included prior diagnoses of melanoma-in-situ, dysplastic nevi, and multiple atypical dysplastic nevi.[6] (*See* Burgess Depo., D.E. 97-2, at 75–76). Moreover, Mr. Collins explained, "Had [AXA] known of this unadmitted information at the time it underwrote the application, and/or at the time the full initial premium was paid, it would not have issued this policy." (Rescission Letter 2).

---

[5] Since melanoma is the most aggressive form of skin cancer, Dr. Bridges, of Skin and Cancer Associates, advised the Insured to have skin examinations every 6-months to 1-year and to remove any irregular moles. (*See* Bridges Depo., D.E. 96-18, at 47, 50–51).

[6] Records from Skin and Cancer Associates received during AXA's death claim investigation and not disclosed by the Insured in the application or otherwise, indicate the Insured was examined or received treatment on 25 separate occasions from October 19, 1998 to March 27, 2012 at Skin and Cancer Associates by Dr. Bridges, Dr. Dhar, and Dr. Indgin. (*See* D.E. 80-12).

5

## II. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine dispute of material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. A'ppx 16, 26 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249–50). Rather, a dispute is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (citations omitted). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence to defeat a properly supported motion for summary judgment. *Id.* at 252. "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to

6


defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Flamingo S. Beach I Condo. Ass'n, Inc.*, 492 F. A'ppx at 26–27 (citing *Anderson*, 477 U.S. at 252). Facts, rather than speculation or conjecture, are required to defeat a motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original) (citation and internal quotation marks omitted); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (holding that conclusory allegations and conjecture cannot be the basis for denying summary judgment).

Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party[,]" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III. ANALYSIS

At the heart of this dispute is whether the Insured's failure to disclose his history of skin cancer justified AXA's rescission of the policy and denial of death benefits. "In Florida,[7] rescission of an insurance policy on the basis of a misstatement or omission in the insurance application is governed by Fla. Stat. Ann. § 627.409." *Miguel v. Metro. Life Ins. Co.*, 200 F. App'x 961, 965 (11th Cir. 2006).

---

[7] Florida law applies to this diversity action where the contract was entered into and executed in Florida. *See United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1563 (11th Cir. 1990); *William Penn Life Ins. Co. of N.Y. v. Sands*, 912 F.2d 1359, 1361 (11th Cir. 1990).

AXA moves for summary judgment, arguing Plaintiff's claim is barred and recovery precluded by section 627.409 Florida Statutes. Pursuant to section 627.409, responses provided to an insurer by an applicant for insurance are considered representations and:

> [A] misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the [insurance] contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in loss.

Fla. Stat. § 627.409(1); *see also Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Sahlen*, 999 F.2d 1532, 1536 (11th Cir. 1993) ("Misrepresentations and incorrect statements in a policy application bar recovery under the policy where, *inter alia*, they are material to the risk assumed by the insurer or the insurer would not have offered the same terms had it known the truth.") (citing substantively similar prior version of Fla. Stat. § 627.409).

As long as the misstatement satisfies subsections (a) *or* (b) of the statute, it is sufficient to void the policy. *See, e.g., Darwin Nat'l Assur. Co. v. Brinson & Brinson*, No. 6:11-cv-1388-Orl-36DAB, 2013 WL 2406154, at *6 (M.D. Fla. June 3, 2013) ("'[T]he statute makes plain that subsections (a) and (b) are written in the disjunctive.'" (alteration in original) (quoting *Miguel*, 200 F. App'x at 967)).

### A. Plaintiff Concedes the Insured's Application Misrepresented His Skin Cancer History.

The Eleventh Circuit, in analyzing section 627.409, found "[a]n essential prerequisite to the application of Florida Statutes section 627.409(1) is that the insured make an inaccurate

8

statement in his application." *Sands*, 912 F.2d at 1362. Although under Florida law such a misrepresentation need not be intentional (*see Cont'l Assur. Co. v. Carroll*, 485 So. 2d 406 (Fla. 1986)), parties are free to contract to an intentional standard, as was done here, requiring only that answers are true to the best of the applicant's "knowledge and belief." *See, e.g., Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1334–35 (11th Cir. 1995) (recognizing that parties can contract for a higher standard than that required by statute, but noting a court may still find an applicant's responses to be false as a matter of law despite "knowledge and belief" provision).

In her Response, Plaintiff concedes: "that (i) the application for insurance at issue contained the complained of misrepresentation; and (ii) that AXA meets the knowledge and belief standard[.]" (Pl.'s Resp. 1). With this prerequisite met, AXA need only put forth undisputed evidence that the Insured's misrepresentations meet either subsection (a) or (b) of the statute; that is, either the misrepresentation was material to AXA's acceptance of the risk or AXA would not have issued the same policy if the true facts had been known. *See Darwin Nat'l Assur. Co.*, 2013 WL 2406154, at *6. AXA puts forth such evidence in the form of: affidavits from its underwriter, its claims investigator, and its senior director of corporate underwriting; AXA's underwriting guidelines; Mr. Kaplan's medical records; and the deposition testimony from doctors and experts.

The burden thus shifts to Plaintiff to come forth with facts and evidence, not mere speculation and conjecture, contradicting AXA's evidence. Plaintiff attempts to meet this burden by arguing: (1) that a genuine dispute exists as to whether any misrepresentation by the Insured would have been material to AXA, because AXA knew of multiple misrepresentations made by the Insured in his application and issued the Policy anyway; or alternatively (2) that a genuine

9

dispute exists as to whether AXA waived its right to rescission by issuing the Policy after it became aware of multiple misrepresentations by the Insured. The Court is not persuaded that either of Plaintiff's arguments rises past the level of conclusory allegations and conjecture.

### 1. The Insured's Skin Cancer Misrepresentation Was Material to AXA's Acceptance of Risk.

For purposes of section 627.409(1), "[a] misstatement is deemed material if the facts accurately stated might reasonably have influenced the insurer in deciding whether to accept the risk." *Carter v. United of Omaha Life Ins.*, 685 So. 2d 2, 6 (Fla. 1st DCA 1996) (citing *Jackson Nat'l Life Ins. Co. v. Proper*, 760 F. Supp. 901, 905 (M.D. Fla. 1991); *Celtic Life Ins. Co. v. Fox*, 544 So. 2d 245, 247 (Fla. 2d DCA 1989); *Minn. Mutual Life Ins. Co. v. Candelore*, 416 So. 2d 1149, 1150 (Fla. 5th DCA 1982)). In the area of life insurance, "[m]isrepresentations related to an insured's medical history or condition obviously affect an insurer's risk in issuing a life insurance policy and may be found to be material as a matter of law." *Mims v. Old Line Life Ins. Co. of Am.*, 46 F. Supp. 2d 1251, 1256 (M.D. Fla. 1999); *see also Proper*, 760 F. Supp. at 906–07 (ordering summary judgment in favor of insurer where beneficiary could not rebut evidence that insured's failure to disclose physician visit, history of weight loss, and use of prescription medication were material to insurer's risk); *Kieser v. Old Line Life Ins. Co. of Am.*, 712 So. 2d 1261, 1264 (Fla. 1st DCA 1998) (affirming summary judgment for insurer where insured's misrepresentations regarding medical history prevented insurer from adequately estimating its risk in issuing policy); *Wis. Nat'l Life Ins. Co. v. Leichter*, 452 So. 2d 1052 (Fla. 3rd DCA 1984) (holding misrepresentation regarding medical history warranted summary judgment); *Smart v. Time Ins. Co.*, 419 So. 2d 686 (Fla. 1st DCA 1982) (affirming summary judgment in favor of insurer where insured failed to disclose numerous doctor visits for nervousness, headaches, and

related problems and listed physician whom she had not seen in years as her regular physician); *Candelore*, 416 So. 2d at 1150 (reversing denial of insurer's motion for directed verdict because applicant's failure to disclose two doctors' visits in month before application was material misrepresentation as a matter of law).

Misrepresentations regarding a medical history of skin cancer are material to the issuance of a life insurance policy. *See Kaminsky v. Pruco Life Ins. Co.*, No. 2:13-CV-1002-AKK, 2015 WL 2238093, at *5 (N.D. Ala. May 12, 2015) (applying Florida law; "it is clear to the court that knowledge of whether an applicant has a history of skin cancer is indeed 'material to the acceptance of the risk' under Section 627.409(1)(a)"). Certainly a reasonable insurer will be influenced by such information in deciding whether to issue a life insurance policy. *See Carter*, 685 So. 2d at 6. What Plaintiff essentially argues, however, is that AXA is an unreasonable insurer and would not have been influenced by such information. (*See* Pl.'s Resp. 12 ("AXA's lackadaisical attitude toward the misrepresented medical conditions known at the time of underwriting [allows an inference] that this particular misrepresentation was immaterial to its approval of a PENT rating" and "that AXA intended to issue a PENT policy without regard to any particular misrepresentation or medical condition.")). The Court cannot accept Plaintiff's argument.

Plaintiff's argument conflates the materiality requirement of subsection (a) with the "would not have issued the [same] policy" requirement of subsection (b). Fla. Stat. § 627.409(1). While courts have recognized "there is a great degree of overlap between the two provisions of the statute" (*Mora v. Tower Hill Prime Ins. Co.*, 155 So. 3d 1224, 1228 n.1 (Fla. 2d DCA 2015)), it is a generally accepted tenant of statutory interpretation that effect must be given

to each provision. Here, courts applying section 627.409(1)(a) look to how a reasonable insurer would act, implying an objective standard. *See, e.g., Kaminsky*, 2015 WL 2238093, at *5 ("Even if true, the relevant inquiry is whether the information 'might reasonably have influenced [the insurer] in deciding whether to accept the risk." (quoting *Carter*, 685 So. 2d at 6)); *Mims*, 46 F. Supp. 2d at 1256 ("a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy." (citing *Singer v. Nationwide Mut. Fire Ins. Co.*, 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987))). Mr. Kaplan's melanoma-in-situ with a history of dysplastic nevi might reasonably have influenced AXA in deciding whether to accept the risk of issuing the Policy; therefore, Mr. Kaplan's conceded misrepresentations are material as a matter of law. AXA was entitled to rescind the policy under section 627.409(1)(a) Florida Statutes.

### 2. AXA Would Not Have Issued the Policy Knowing the True Facts

Although a finding of a material misrepresentation under section 627.409(1)(a) is sufficient to rescind the Policy, the Court will also analyze Plaintiff's arguments under section 627.409(1)(b). Specifically, Plaintiff alleges that AXA knew or should have known of misrepresentations or omissions in the Insured's application concerning the following conditions which should have precluded Policy issuance at the PENT rating: Hypertension, High Cholesterol, Nephrectomy, Low Back Pain, Osteoporosis, and Family History of Cancer. *See* (Pl.'s Resp. 5–8). Plaintiff's argument is unavailing.

The undisputed evidence, however, demonstrates that AXA followed its underwriting guidelines as to these conditions; none of these conditions precluded issuance of the Policy.[8]

---

[8] Despite Plaintiff's conclusory assertion that "AXA deviated substantially from its underwriting guidelines (Resp. 15), the guidelines themselves ("Underwriting Guidelines," D.E. 96-9), the

Skin cancer on the other hand, in particular melanoma-in-situ, precludes issuance of a policy at a PENT rating. (*See* Underwriting Guidelines 9). What is more, Mr. Kaplan's condition, melanoma-in-situ with a history of dysplastic nevi, precludes any preferred rating whatsoever. (*See id.*). AXA has provided unrefuted evidence that it would not have issued the policy, or would not have issued the policy at the same premium, if AXA had known of the skin cancer history at the time of policy issuance. (*See, e.g.*, Underwriting Guidelines 9; D.E.s 80-3 ¶¶ 13–15; 80-5; 80-7 ¶ 22; 96-12; 96-13). Plaintiff's speculation does not create a genuine dispute of material fact as to this issue (*see Cordoba*, 419 F.3d at 1181), and AXA was also entitled to rescind the Policy under section 627.409(1)(b) Florida Statutes.

### B. AXA Did Not Waive Its Right To Rescind The Policy.

Finally, the Court also rejects Plaintiff's argument that the information in Dr. Dominguez's medical records, showing the Insured's application to contain multiple misrepresentations, was sufficient to place AXA on notice to inquire further. (*See* Pl.'s Resp. 17–19). Under Florida law, "[w]here an insurer is on notice that it must itself make further inquires [sic] about an insured's health, it is bound by what a ***reasonable*** investigation would have shown." *Cox v. Am. Pioneer Life Ins. Co.*, 626 So. 2d 243, 246 (Fla. 5th DCA 1993) (emphasis added) (citing *Columbian Nat'l Life Ins. Co. v. Lanigan*, 19 So. 2d 67 (Fla. 1944)); *see also Fecht v. Makowski*, 172 So. 2d 468, 471 (Fla. 3d DCA 1965) ("insurer is charged with all

---

underwriter's notes (D.E. 80-5), and the declaration of the underwriter, Peter Warner (D.E. 80-3), all show that AXA considered all conditions of which it became aware during the application process and that, even considering all of those conditions, AXA could issue the Policy at the PENT rating. *See* Underwriting Guidelines for: Hypertension (D.E. 96-9 at 3, 34–35); Cholesterol (*id.* at 2); Nephrectomy (*id.* at 13, 18, 31–32); Low Back Pain (*id.* at 13); Osteoporosis (*id.* at 15, 38–39); and Family History of Cancer (*id.* at 21).

13

knowledge that it *might* have obtained had it pursued the independent inquiry to the end with reasonable diligence and completeness" (emphasis in original)).

Here, AXA certainly made a reasonable and diligent inquiry into the Insured's medical history once AXA became alerted to the misrepresentations in the policy application. As Plaintiff concedes, AXA "suspended the underwriting of the subject policy until receipt of medical records required for a 57-year-old applicant"; noted, upon receipt of those medical records, evidence of a prior nephrectomy; and, as a result, "requested all Dr. Dominguez's notes [regarding the Insured] from November, 2009 to the present." (Pl.'s Resp. 4). This reasonable and diligent inquiry into the Insured's medical history, while it revealed several undisclosed medical conditions that did not affect the PENT rating, did not reveal the Insured's skin cancer history. And as Plaintiff further concedes, the records provided by Dr. Dominguez could not have revealed this material misrepresentation. (*See* Pl.'s Resp. 5 ("nor could Dr. Dominguez's records have pointed AXA to this 14-year old diagnosis")).[9]

## IV. CONCLUSION

The Court grants summary judgment in AXA's favor. The Court is satisfied with Defendant's showing that a representation on the Insured's policy application was false; the representation was clearly contrary to facts then known to the Insured and therefore was false as a matter of law; the misrepresentation was material to acceptance of the risk assumed by AXA; and had AXA known the truth, it would not have in good faith issued the insurance policy or

---

[9] Dr. Dominguez's records referenced three other physicians; however, Plaintiff has provided no evidence that an investigation into the records of these three other physicians would have led to AXA's discovery of the Insured's skin cancer history. Plaintiff's assertion that it is "at least a jury question . . . whether a reasonable investigation into Mr. Kaplan's three other known physicians would have led to knowledge regarding the 14-year-old skin cancer excision" (Resp. 19), is nothing more than speculation and conjecture and insufficient to survive summary judgment given the factual evidence before the Court and lack of factual evidence submitted by Plaintiff. *See Cordoba*, 419 F.3d at 1181.

would have issued it subject to different terms. Further, AXA did not waive its right to rescission under § 627.409(1).

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 78]** is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 58, the Court will enter a separate final judgment for Defendant, AXA Equitable Life Insurance Company. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE and ORDERED** in Chambers, Miami, Florida, this 14th day of July, 2016.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All counsel of record